IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DNA GENOTEK INC.,                              )
                                               )
                        Plaintiff,             )
                                               )
        v.                                     )      C.A. No. 15-661-SLR
                                               )
SPECTRUM DNA; SPECTRUM SOLUTIONS               )      ████████████
L.L.C.; and SPECTRUM PACKAGING L.L.C.,         )
                                               )
                        Defendants.            )      REDACTED - PUBLIC VERSION

## PLAINTIFF DNA GENOTEK INC.'S ANSWERING BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:                        John W. Shaw (No. 3362)
David C. Doyle                     Karen E. Keller (No. 4489)
Brian M. Kramer                    300 Delaware Avenue, Suite 1120
John R. Lanham                     SHAW KELLER LLP
Dean S. Atyia                      Wilmington, DE 19801
MORRISON FOERSTER LLP              (302) 298-0700
12531 High Bluff Drive, Suite 100  kkeller@shawkeller.com
San Diego, CA 92130                *Attorneys for Plaintiff*
(858) 314-5415

Dated:  September 30, 2015

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 2

III.    STATEMENT OF FACTS ........................................................................................... 3

        A.      Spectrum Does Not Distinguish Between Products Distributed Through
                Ancestry and Products Shipped Directly by Spectrum......................................... 3

        B.      ████████████████████████████████████ ................................................................... 6

IV.     ARGUMENT ............................................................................................................. 7

        A.      Spectrum's Contacts Satisfy the Statutory Prong of the Jurisdictional
                Analysis .................................................................................................................. 8

                1.      Spectrum is Subject to Stream of Commerce Jurisdiction......................... 8

                2.      Spectrum and Ancestry Have an Agency Relationship ........................... 11

                3.      Spectrum and Ancestry Are Conspirators for Purposes of Selling
                        the Infringing Product ............................................................................. 13

        B.      Spectrum's Contacts Satisfy the Due Process Prong of the Jurisdictional
                Analysis................................................................................................................ 14

        C.      DNA Genotek Requests Full Jurisdictional Discovery if the Court
                Concludes It Is Warranted ................................................................................... 17

V.      CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.,*
   689 F.3d 1358 (Fed. Cir. 2012)..........................................................................9, 15

*AMP, Inc. v. Methode Elecs., Inc.,*
   823 F. Supp. 259 (M.D. Pa. 1993)......................................................................9

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*
   480 U.S. 102 (1987)............................................................................................15

*Belden Techs., Inc. v. LS Corp.,*
   626 F. Supp. 2d 448 (D. Del. 2009)....................................................................9

*Belden Techs., Inc. v. LS Corp.,*
   829 F. Supp. 2d 260 (D. Del. 2010)....................................................................8, 9

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
   21 F.3d 1558 (Fed. Cir. 1994)............................................................................15

*Boone v. Oy Partek Ab,*
   724 A.2d 1150 (Del. 1997) ................................................................................9

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)............................................................................................17

*Eastman Chem. Co. v. AlphaPet Inc.,*
   C.A. No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477 (D. Del. Nov. 18, 2011)............9

*Graphics Props. Holdings, Inc. v. ASUS Computer Int'l,*
   70 F. Supp. 3d 654 (D. Del. 2014)......................................................................8, 9, 16

*Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.,*
   611 A.2d 476 (Del. 1992) ..................................................................................13

*IMO Indus., Inc. v. Kiekert AG,*
   155 F.3d 254 (3d Cir. 1998)................................................................................7, 8

*Int'l Shoe Co. v. Wash.,*
   326 U.S. 310 (1945)............................................................................................8, 15

*J. McIntyre Machinery, Ltd. v. Nicastro,*
   131 S. Ct. 2780 (2011)........................................................................................9, 15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
    C.A. No. 14-28-LPS, 2015 U.S. Dist. LEXIS 106515 (D. Del. Aug. 13, 2015)
    *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS 127972
    (D. Del. Sept. 24, 2015) ..............................................................................................................15

*Mass. Sch. of Law at Andover, Inc. v. ABA,*
    107 F.3d 1026 (3d Cir. 1997)........................................................................................................18

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004)..............................................................................................................8

*Oticon, Inc. v. Sebotek Hearing Sys., LLC*,
    865 F. Supp. 2d 501 (D. N.J. 2011) ...............................................................................................9

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
    547 F. Supp. 2d 365 (D. Del. 2008)..........................................................................................9, 10

*Robert Bosch LLC v. Alberee Prods.*,
    70 F. Supp. 3d 665 (D. Del. 2014) ............................................................................... *passim*

*Waters v. Deutz Corp.*,
    460 A.2d 1332 (Del. 1983) ...........................................................................................................12

*Wesley-Jessen Corp. v. Pilkington Visioncare*,
    863 F. Supp. 186 (D. Del. 1993).................................................................................... *passim*

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).......................................................................................................................15

STATUTES

10 Del. C. § 3104(c)...........................................................................................................................11

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Despite telling the Court that they have only two customers, jurisdictional discovery revealed that the Spectrum entities ("Spectrum") brag to the public, including to potential customers in Delaware, that they have thousands of customers from which they have received more than one million test results.  It further revealed that Spectrum and its business partner, Ancestry.com DNA LLC ("Ancestry"), have engaged in a secretive, years-long collaboration to design, develop, manufacture, and distribute the accused device, a saliva DNA collection kit ("Saliva Collection Kit").  Spectrum's motion to dismiss should be denied.

Delaware courts have repeatedly held that manufacturers cannot escape personal jurisdiction in this state by using nationwide distributors and resellers.  Yet Spectrum asks the Court for dismissal on exactly these facts.  Moreover, the close relationship between Spectrum and Ancestry, ██████████████████████████████████████████ ████████████ makes this unlike a case of a traditional third-party supplier.  Spectrum advertises its Saliva Collection Kits distributed by Ancestry as if they were direct sales from Spectrum.  ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████

Spectrum is subject to personal jurisdiction under Delaware law by virtue of its use of the stream of commerce and its relationship with Ancestry.  Spectrum's contacts with Delaware also satisfy specific personal jurisdiction under the Due Process clause.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

This lawsuit is based on Spectrum's manufacture, sale, and offer for sale of infringing saliva collection devices in collaboration with Ancestry (the defendant in a separate suit by DNA Genotek Inc. ("DNA Genotek") pending with this Court), which culminated in Spectrum's recent launch of a website offering the infringing product to the public.

After filing suit against Ancestry, DNA Genotek learned that Ancestry's infringing product was also being made, used, offered for sale, marketed, distributed, and/or imported by Spectrum.  (D.I. 1 ¶ 12.)  Spectrum launched a website, www.spectrum-dna.com, advertising the infringing product to the general public, as opposed to just Ancestry.  DNA Genotek filed a complaint for patent infringement against Spectrum the next day.  (D.I. 1.)

Following the receipt of samples of the infringing product and confirming infringement, DNA Genotek promptly filed a Motion for Preliminary Injunction.  (D.I. 8.)  On August 27, 2015, the Court held a telephonic status conference to discuss the Motion for Preliminary Injunction.  During that conference, counsel for Spectrum disclosed that it anticipated moving to dismiss for lack of personal jurisdiction.  The Court directed Spectrum to file any such motion by September 4, 2015.  Spectrum filed its Motion to Dismiss for Lack of Personal Jurisdiction on that day, which included a declaration from Mr. Gregg Williams that raised facts outside of the pleadings.  (D.I. 19.)

DNA Genotek served requests for document discovery and depositions on Spectrum and Ancestry, seeking information related to Mr. Williams's declaration and Spectrum's connections with Delaware.  Counsel for Spectrum and Ancestry informed DNA Genotek that they would not provide discovery unless ordered by the Court.  On September 10, 2015, the Court held a further telephonic status conference to discuss case progress.  The Court ordered Spectrum to make Mr.

Williams available for deposition and to produce any documents identified in Mr. Williams's declaration.  The Court also clarified that this jurisdictional discovery was a "first step," and that further discovery may be ordered if requested in DNA Genotek's opposition brief.

### III.   STATEMENT OF FACTS

#### A.   Spectrum Does Not Distinguish Between Products Distributed Through Ancestry and Products Shipped Directly by Spectrum

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████    Ancestry, a Delaware corporation, sells these Saliva Collection Kits throughout the United States to customers interested in tracking their family trees and ethnic heritage.  (D.I. 1 ¶ 11.)  Ancestry is the defendant in a separate case filed by DNA Genotek concerning the same facts as the present litigation, which is also before this Court.  (*Id.*)

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Spectrum's website likewise contains a testimonial from Mr. Ben Oyler, Ancestry's Director of Operations, which refers to Ancestry's "ongoing partnership" with Spectrum and praises Spectrum's collaboration in the development and launch of the Saliva Collection Kit.  (Kramer Decl. Ex. 2 at 2.)  Indeed, even when arguing that the relationship between Spectrum and Ancestry was an arms-length relationship, Spectrum's counsel labeled the relationship a "partnership" in the September 10 status conference.  (Kramer Decl. Ex. 3 at 10:21-23.)

██████████████████████████████████████████████████████



which are distributed nationwide.  (D.I. 1 ¶¶ 5-6, 24-26.)

In fact, Ancestry hosts a separate "Delaware family history research page" where it targets customers interested in Delaware genealogy.  (Kramer Decl. Ex. 4.)

Spectrum's marketing materials make no distinction between sales of its Saliva Collection Kit distributed through Ancestry and sales of the Saliva Collection Kit distributed directly through Spectrum.  Without referencing Ancestry, Spectrum describes its product on its website as a "[t]ried and true performer with over 1 million samples tested."



(Kramer Decl. Ex. 5 at 1.)  Spectrum's website similarly states that "[a]fter two years of

development and testing, *we* now have over one million samples tested." (Kramer Decl. Ex. 2 at 1 (emphasis added).) ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

For example, Spectrum's website contains a comparison between the SpectrumDNA Saliva Collection Kit to "Competitor G" over the testing of roughly 2,000 samples from each kit. (Kramer Decl. Ex. 6.)  Spectrum does not identify the thousands of users as Ancestry customers. Rather, Spectrum calls them "SpectrumDNA customers who were randomly selected to receive either an [sic] SpectrumDNA kit [] or a Competitor G kit []." (*Id.*)



(*Id.*) ████████████████████████████████████

**B.** ███████████████████████████



## IV.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a case based on the court's lack of personal jurisdiction over that party.  Determining the existence of personal jurisdiction requires a two-part analysis – one statutory and one constitutional.  First, a court analyzes the long-arm statute of the state in which the court is located.  *See IMO Indus.,*

*Inc. v. Kiekert AG*, 155 F.3d 254, 258-259 (3d Cir. 1998).  Here, "Delaware's long arm statute . . . is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause.'"  *Robert Bosch LLC v. Alberee Prods.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014) (quoting *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480–81 (Del. 1992)).

Next, the court must determine whether exercising jurisdiction over the defendant in Delaware comports with the Due Process Clause of the Constitution.  *See IMO Indus.*, 155 F.3d at 259.  Due process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must present a prima facie case of jurisdiction and "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### A.      Spectrum's Contacts Satisfy the Statutory Prong of the Jurisdictional Analysis

### 1.      Spectrum is Subject to Stream of Commerce Jurisdiction

As Spectrum acknowledges, the "stream of commerce" theory provides a basis for personal jurisdiction under Delaware law.  *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) ("*Belden II*").  The stream of commerce theory satisfies the statutory prong of the personal jurisdictional analysis, even though it is not expressly authorized by Delaware's long-arm statute.  *Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*, 70 F. Supp. 3d 654,

662 (D. Del. 2014); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. 1997).

Under the stream of commerce theory, a plaintiff must show (1) that the defendant intends to serve the Delaware market and (2) that intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product. *Belden II*, 829 F.Supp. 2d at 267.  While Spectrum correctly identifies this two-part test, it fails to acknowledge that Delaware courts "do not require evidence that Delaware itself was specifically targeted" to establish intent to serve the Delaware market.  *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 456 n. 6 (D. Del. 2009) ("*Belden I*") (quoting *Power Integrations, Inc. v. BCD Semiconductor Corp.*,[1] 547 F. Supp. 2d 365, 373 (D. Del. 2008)).  Instead, intent exists where a non-resident firm intends to serve the United States and does not exclude Delaware from its marketing and distribution efforts. *Id.*  Nor is the identity of the party who ultimately delivered the product to Delaware determinative of personal jurisdiction. "The fact that the sales are routed through [defendant's] distributors and sales agents does not shield it from jurisdiction." *AMP, Inc. v. Methode Elecs., Inc.*, 823 F. Supp. 259, 267 (M.D. Pa. 1993).

The case of *Robert Bosch LLC v. Alberee Products* is illustrative.  70 F. Supp. 3d at 678. In that case, Saver, a Maryland company, imported wiper blade components from manufacturers in Korea. *Id.* at 671.  Saver was a "large supplier of wiper blades in the United States."  Saver

---

[1] One New Jersey case concluded that *Power Integrations* and several other jurisdictional cases were overruled in part by *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501 (D. N.J. 2011).  In this District, that reasoning has been rejected.  *See Robert Bosch LLC v. Alberee Prods.*, 70 F. Supp. 3d 665, 677 n.8 (D. Del. 2014).  In *Bosch*, Judge Stark correctly concluded that *McIntyre*, an opinion defined by conflicting pluralities and a narrow holding, did not change the law of jurisdiction. *Id.*; *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012) ("[T]he law remains the same after *McIntyre*"); *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477, at *54 (D. Del. Nov. 18, 2011) (the impact of *McIntyre*, if any, on the long-standing and well-established Delaware jurisprudence relating to stream of commerce is unclear).  *Power Integrations* and its progeny remain good law.

and its importer assembled the wiper blades in their Maryland facilities. *Id*. at 678. Saver then sold the wiper blades to the national retailer Costco. *Id.* Costco had a location in Delaware that sold Saver's blades. *Id.* There was no allegation that Saver directly or personally shipped the wiper blades into Delaware, only that the wiper blades were shipped through an "established distribution channel" into the state. *Id.* at 671.

On these facts, the *Bosch* court found that the stream of commerce theory was satisfied. Specifically, the court found that Saver "sells the accused product to the nationwide reseller Costco with the expectation that Costco will sell the accused product in all parts of the United States, including Delaware, Saver presumptively intends to target the Delaware market." *Id.* at 678. Moreover, this intent to target the United States market has "result[ed] in the introduction of the [accused] product to this State … and plaintiff's cause of action [i.e., patent infringement] arises from injuries caused by that product.'" *Id.* (quoting *Power Integrations*, 547 F. Supp. 2d at 372).

███████████████████████████████████████████████████████

████████   These facts satisfy the statutory prong of the personal jurisdiction analysis.  *Bosch*,

70 F. Supp. 3d at 678.

### 2.    Spectrum and Ancestry Have an Agency Relationship

In addition to the stream of commerce theory, the Delaware long-arm statute provides in

relevant part that:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person *or through an agent*:
> (1) Transacts any business or performs any character of work or service in the State. . .

10 Del. C. § 3104(c) (emphasis added).

"[T]he Delaware courts have made clear that as used in § 3104, the word 'agent' is not

constricted to that one definition."  *Wesley-Jessen Corp. v. Pilkington Visioncare*, 863 F. Supp.

186, 188 (D. Del. 1993).  Rather, agency should be viewed to confer jurisdiction to the

maximum extent permitted by the Due Process Clause, and "Delaware courts have found that an

agency relationship may exist between corporate affiliates with close business ties, and that a

conspirator accepts all coconspirators as agents."  *Id.*

For purposes of the design, manufacture, and distribution of the Saliva Collection Kit,

Ancestry and Spectrum act like a unified business, not like independent corporations.  Even

though discovery to date has not indicated common ownership, Spectrum and Ancestry have

sufficiently close business connections that their relationship cannot be viewed as arms-length.

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████



Through these agreements, Spectrum plays an integral role in the manufacturing and distribution chain for the Saliva Collection Kit.  As demonstrated by the claims on Spectrum's website that it has thousands of customers and over a million test results, Ancestry's nationwide distribution of the Saliva Collection Kits "in a practical sense, and to a substantial degree, [gives Spectrum] the benefits and advantages it would have enjoyed by operating through its own office or paid sales force."  *Waters v. Deutz Corp.*, 460 A.2d 1332, 1337 (Del. 1983) (quoting *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 82-83, 346 P.2d 409 (1959)).  The fact that closely-functioning companies choose to divide tasks is not relevant to the jurisdictional analysis and cannot prevent a court from exercising its jurisdiction.  *See Wesley-Jessen Corp.*, 863 F. Supp. at 189.  As the Delaware Supreme Court has held, when a product is distributed through "independently-owned distributorships and dealerships," rather than directly by a corporation's employees, "the [jurisdictional] 'contacts' exist one way or the other and for precisely the same purpose.  The differences are differences only in form and description."  *Waters*, 460 A.2d at 1337 (quoting *Regie Nationale Des Usines Renault v. Super. Ct.*, 208 Cal. App. 2d 702, 703

(1962)).

For the purpose of jurisdiction, Ancestry and Spectrum "may be considered two arms of the same business group in their [pursuing] the common goal of selling [infringing Saliva Collection Kits] in Delaware and other markets," and be deemed to share jurisdictional contacts. *Wesley-Jessen Corp.*, 863 F. Supp. at 189.

### 3. Spectrum and Ancestry Are Conspirators for Purposes of Selling the Infringing Product

An "agent" for purposes of the Delaware long-arm statute is defined broadly to "include not only a non-resident defendant's formal agents but also a defendant's coconspirators." *Hercules*, 611 A.2d at 481. A conspiracy can be found in a civil case for patent infringement. *Wesley-Jessen Corp.*, 863 F. Supp. at 189. The five-part test for determining whether a conspirator is subject to jurisdiction in Delaware is that:

> (1) a conspiracy . . . existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Hercules*, 611 A.2d at 482.

Where a non-Delaware defendant sold an infringing product for distribution in Delaware, the product was distributed in Delaware, and the non-Delaware defendant either knew or should have known that the product was distributed in Delaware, the conspiracy test is met in a patent infringement case. *Wesley-Jessen Corp.*, 863 F. Supp. at 189-190.

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████████

████████████████████   Spectrum either knew or should have known that Ancestry would distribute the kits in Delaware.  Ancestry is a Delaware corporation with a nationwide presence that purports to be the leader in DNA testing for family history.  (Kramer Decl. Ex. 11.) Ancestry even specifically markets to Delaware through its "Delaware family history research page."  (Kramer Decl. Ex. 4.) ████████████████████████████████████ █████████████████████████████████████████████████   Only through willful ignorance could Spectrum avoid knowledge of Saliva Collection Kits being distributed in Delaware, and it certainly "should have known" of such sales.  *Wesley-Jessen Corp.*, 863 F. Supp. at 189-190.

While the above facts are sufficient to establish conspiracy personal jurisdiction under Delaware law, DNA Genotek's Complaint provides even more detail.  DNA Genotek alleges that Spectrum manufactures the infringing Saliva Collection Kit used by Ancestry, which is the subject of a separate lawsuit.  (D.I. 1 ¶¶ 11-12.)  DNA Genotek further alleges that Spectrum decided to make the infringing product after partnering with Ancestry.  (*Id.* ¶ 21.)  Spectrum concealed its making, using, selling, and offering for sale of the Saliva Collection Kit from DNA Genotek and much of the public.  (*Id.* ¶ 5.)  Under the conspiracy jurisdictional analysis, as well as the traditional agency analysis, Spectrum should be deemed to share Ancestry's contacts with Delaware and be subject to the jurisdiction of this Court.

**B.      Spectrum's Contacts Satisfy the Due Process Prong of the Jurisdictional Analysis**

A defendant is subject to the jurisdiction of a federal court where its conduct and connections with the forum state are such that it should "reasonably anticipate being haled into

court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), so that

exercising personal jurisdiction would not offend "traditional notions of fair play and substantial

justice." *Int'l Shoe*, 326 U.S. at 316.

The Supreme Court set forth in *World-Wide Volkswagen* that a "forum State does not

exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a

corporation that delivers its products into the stream of commerce with the expectation that they

will be purchased by consumers in the forum State." 444 U.S. at 297-298. The Supreme Court

has subsequently addressed the stream of commerce theory in *Asahi Metal Industry Co. v.

Superior Court of California*, 480 U.S. 102 (1987) and *J. McIntyre Machinery, Ltd. v. Nicastro*,

131 S. Ct. 2780 (2011), without reaching a conclusive majority opinion.

Accordingly, courts in patent litigation typically follow *Beverly Hills Fan Co. v. Royal

Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), as the most recent precedent. *AFTG-TG, LLC v.

Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012) (*per curiam*) (following *Asahi*

and *McIntyre*, the controlling precedent is still *Beverly Hills Fan*). The *Beverly Hills Fan*

holding can be summarized as follows: "if the defendant has minimum contacts with the forum

state—sufficient to establish specific jurisdiction as to sales of a product within that state—then

the plaintiff 'will be able to seek redress [there] for sales of the accused [product] to consumers

… in other states' even if 'the bulk of the harm inflicted on [the plaintiff] may occur through

sales in these other states.'" *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, C.A. No. 14-

28-LPS, 2015 U.S. Dist. LEXIS 106515 (D. Del. Aug. 13, 2015) (quoting *Beverly Hills Fan Co.*,

21 F.3d at 1568 & n.21), *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS

127972 (D. Del. Sept. 24, 2015).

Two cases from this District help demonstrate the level of contacts required by this case

law.  First, in *Bosch*, the facts of which are detailed above in Section IV.A.1, the defendant was found to have sufficient minimum contacts because it "target[ed] the Delaware market" by "sell[ing] the accused product to the nationwide reseller Costco with the expectation that Costco will sell the accused product in all parts of the United States, including Delaware."  *Bosch*, 70 F. Supp. 3d at 678.  Second, in *Graphics Properties Holdings, Inc. v. ASUS Computer International*, the defendants were found to have sufficient minimum contacts because they sold the accused products to a California-based subsidiary, "which then sells the accused products to resellers for distribution across the United States," including Delaware, and that defendants "are aware of and actively utilize these reseller outlets to sell the accused devices."  70 F. Supp. 3d at 662-64.

This case is much the same.  Here, Spectrum is the sole supplier of saliva collection devices to Ancestry, a Delaware corporation with a nationwide distribution network for its products.  (Kramer Decl. Ex. 11; D.I. 1 ¶¶ 5-6, 11-12, 24-26.)



Moreover, Spectrum "could well expect to be haled into court in Delaware" 

*Wesley-Jessen Corp.*, 863 F. Supp. at 190

"Therefore, [Spectrum] had 'fair warning' that the sale of the accused products could 'subject them to the jurisdiction of a foreign sovereign.'" *Wesley-Jessen Corp.*, 863 F. Supp. at 190 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### C.  DNA Genotek Requests Full Jurisdictional Discovery if the Court Concludes It Is Warranted

During the September 10, 2015, status conference, the Court indicated that further discovery may be ordered if requested in DNA Genotek's brief.  DNA Genotek believes that this brief provides a showing of personal jurisdiction sufficient to justify denial of Spectrum's motion without further discovery.  Yet if the Court concludes that DNA Genotek has not made an adequate showing to justify an exercise of jurisdiction, DNA Genotek respectfully requests that the Court order Spectrum and Ancestry to participate fully in jurisdictional discovery.  *Mass. Sch. of Law at Andover, Inc. v. ABA,* 107 F.3d 1026, 1042 (3d Cir. 1997) (jurisdictional

discovery should be allowed unless the claim of personal jurisdiction is clearly frivolous).

In particular, there are troubling inconsistencies between Mr. Williams's declaration and the facts, as well as gaps in Mr. Williams's knowledge, indicating that further discovery may provide for further evidence of jurisdictional importance.  For example, Mr. Williams's declaration states that "[t]he component parts for the large majority of the DNA sample collection kits that Spectrum has sold have been manufactured in Utah."  (Williams Decl., D.I. 27 ¶ 14.) ██████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████████    To the extent that Spectrum takes the implausible position that Ancestry (a Delaware corporation with a nationwide presence that has sold over a million units) has not sold or distributed a sufficient number of Saliva Collection Kits in Delaware, then both Spectrum and Ancestry should be ordered to provide unfettered access to their sales and shipping records to test such a claim. ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████  Likewise, communications between Spectrum and Ancestry relating to the Saliva Collection Kit are plainly relevant to the agency and co-conspirator relationship between those companies, but have not been produced.

DNA Genotek respectfully requests that the Court not allow further delay to track down additional, unnecessary jurisdictional discovery.  However, to the extent that the Court is not inclined to find that Spectrum is subject to jurisdiction based on the current facts, full jurisdictional discovery from Spectrum and Ancestry (which is a party to co-pending litigation and likely controls at least some of the jurisdictional facts) should be ordered before the Court decides the motion.

## V.      CONCLUSION

DNA Genotek requests that the Court deny Defendants' Motion to Dismiss or, in the

alternative, order that Spectrum and Ancestry respond fully to DNA Genotek's discovery

requests and schedule further proceedings on the issue of personal jurisdiction.


                                        Respectfully submitted,

                                        */s/ Karen E. Keller*
                                        Karen E. Keller (No. 4489)
                                        300 Delaware Avenue, Suite 1120
                                        SHAW KELLER LLP
                                        Wilmington, DE 19801
                                        (302) 298-0700
OF COUNSEL:                             kkeller@shawkeller.com
David C. Doyle                          *Attorneys for Plaintiff*
Brian M. Kramer
John R. Lanham
Dean S. Atyia
MORRISON FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 314-5415

Dated:  September 30, 2015

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on September 30, 2015, this document was served

on the persons listed below in the manner indicated:

**BY E-MAIL**

David E. Moore
Stephanie E. O'Byrne
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
sobyrne@potteranderson.com

Michael J. Sacksteder
FENWICK & WEST LLP
555 Califorinia Street
San Francisco, CA 94104
(415) 875-2300
msacksteder@fenwick.com


Melanie L. Mayer
FENWICK & WEST LLP
1191 Second Avenue
Seattle, WA  98101
(206) 389-4510
mmayer@fenwick.com


*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
300 Delaware Avenue, Suite 1120
SHAW KELLER LLP
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*