IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DNA GENOTEK INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-661-SLR |
| | ) |
| SPECTRUM DNA, SPECTRUM | ) |
| SOLUTIONS L.L.C., and SPECTRUM | ) |
| PACKAGING L.L.C., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

At Wilmington this 4th day of February, 2016, having reviewed the papers filed in

connection with the pending motions, and having heard oral argument on the same, the

court issues its decision based on the reasoning that follows:

1. **Background.** Plaintiff DNA Genotek Inc. ("DNAG") is a Canadian corporation

with its principal place of business in Kanata, Ontario. DNAG is a wholly-owned

subsidiary of OraSure Technologies, Inc., a Delaware corporation with its principal

place of business in Bethlehem, Pennsylvania. Defendants Spectrum DNA, Spectrum

Solutions L.L.C., and Spectrum Packaging L.L.C. (collectively "Spectrum") are Utah

limited liability companies with their principal place of business in Draper, Utah.

2. DNAG is a leading provider of products for biological sample collection, such

as saliva collection devices (also referred to as saliva test kits) for DNA testing. DNAG

is the owner by assignment of U.S. Patent No. 8,221,381 ("the '381 patent"), entitled

"Container System for Releasably Storing a Substance," that issued July 17, 2012. On or about July 31, 2015, Spectrum launched a website offering saliva test kits to the public, which kits are accused of infringing the '381 patent in this lawsuit (hereinafter, "the accused product"). In this regard, Spectrum facilitates the production and supply of the accused product to Ancestry.com DNA, LLC ("Ancestry"), a Delaware limited liability company with its principal place of business in Provo, Utah, for sale in interstate commerce, including in Delaware. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). There are two pending motions at bar. DNAG has filed a motion seeking to preliminarily enjoin Spectrum's sale of the accused product. Spectrum has filed a motion to dismiss for lack of personal jurisdiction.

2. **Personal jurisdiction.** Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735

F.2d 61, 67 n. 9 (3d Cir. 1984).

3. To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *See id.* at 66; *Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. *See Reach & Assocs.*, 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. *See id.; see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

4. Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C. § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104(c)(1)-(4). With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354, 355 (D. Del. 2008). Subsection (4) confers general jurisdiction, which requires a

3

greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

5. If defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to defendant's activities in the forum State, so long as defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991).

6. Spectrum has moved to dismiss, arguing that it has no contacts with the State of Delaware. The record discloses that Spectrum has no facilities, employees, bank accounts, or other physical presence in Delaware. Spectrum is not registered to do business in Delaware. Aside from its website,[1] available to Delaware residents via the internet, Spectrum has not shipped any product to Delaware. Nevertheless, DNAG

---

[1]Www.spectrum-dna.com

4

asserts that the exercise of personal jurisdiction over Spectrum falls within the scope of the Delaware long-arm statute under the "dual jurisdiction" or "stream of commerce" theory that implicates 10 Del. C. § (c)((1) and (c)(4).

7.  I have recognized the "dual jurisdiction" or "stream-of-commerce" analytical framework as a basis for personal jurisdiction under Delaware law. *See Intellectual Ventures I LLC v. Ricoh Co., Ltd.,* 67 F. Supp. 3d 656 (D. Del. 2014); and *Belden Techs., Inc. v. LS Corp.,* 829 F. Supp. 2d 260 (D. Del. 2010). *Accord Robert Bosch LLC v. Alberee Products, Inc.,* 70 F. Supp. 3d 665 (D. Del. 2014). Under this theory, it is DNAG's burden to demonstrate that:  (1) Spectrum has an intent to serve the Delaware market; (2) this intent results in the introduction of the accused product into Delaware; and (3) DNAG's cause of action arises from injuries caused by sale of the accused product in Delaware. *See Belden,* 829 F. Supp. 2d at 267-68; *Bosch,* 70 F. Supp. 3d at 675.

8.  Under the construct discussed in *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1158 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998), "the touchstone of dual jurisdiction analysis is intent and purpose to serve the Delaware market." *Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp.2d 365, 372 (D. Del. 2008); *see Boone,* 724 A.2d at 1158. In this regard, "[a] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc.*, 547 F. Supp. 2d at 373.

9. In addition to demonstrating that Spectrum's conduct falls within the scope of

Delaware's long-arm statute, DNAG must also demonstrate that exercising personal

jurisdiction over Spectrum passes constitutional muster under the Due Process Clause

of the Fourteenth Amendment. For the constitutional dimension to add anything of

substance to the jurisdictional inquiry, one looks to Justice O'Connor's plurality opinion

in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480

U.S. 102 (1987). Rejecting the more liberal approach taken by Justice Brennan (also

writing for four justices),[2] the O'Connor plurality in *Asahi* held that

> [t]he "substantial connection" . . . between the defendant and the forum State
> necessary for a finding of minimum contacts must come about by **an action
> of the defendant purposefully directed toward the forum State."** . . . The
> placement of a product into the stream of commerce, without more, is not
> an act of the defendant purposefully directed toward the forum State.
> Additional conduct of the defendant may indicate an intent or purpose to
> serve the market in the forum State, for example, designing the product for
> the market in the forum State, advertising in the forum State, establishing
> channels for providing regular advice to customers in the forum State, or
> marketing the product through a distributor who has agreed to serve as the
> sales agent in the forum State. But a defendant's awareness that the stream
> of commerce may or will sweep the product into the forum State does not
> convert the mere act of placing the product into the stream into an act
> purposefully directed toward the forum State.

*Id.* at 112 (emphasis in original).[3]

10. **Analysis.** The linchpin of DNAG's jurisdictional argument is that Spectrum

sells the accused product to Ancestry which has nationwide sales, including in

_____

[2]"[J]urisdiction premised on the placement of a product into the stream of
commerce is consistent with the Due Process Clause" for, "[a]s long as a participant in
this process is aware that the final product is being marketed in the forum State, the
possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117.

[3]The court in *Boone* adopted this test. 724 A.2d at 1159 and n.4.

6

Delaware. DNAG argues that it has adduced evidence of "additional conduct" sufficient
to indicate "an intent or purpose" on the part of Spectrum "to serve the market" in
Delaware. *Id.* The record relied on by DNAG includes the following:  (1) the October
2012 Manufacturing Agreement (as amended September 25, 2014) between Ancestry
and Spectrum whereby Spectrum facilitates the manufacture and delivery of the
accused product according to Ancestry's specifications (D.I. 31, exs. 7, 8); (2) the
December 31, 2014 Purchase and Sales Commission Agreement between Ancestry
and Spectrum whereby Spectrum is permitted to sell the accused product if Ancestry
approves (*id.,* ex. 9); (3) several invoices for the delivery of the accused product from
Spectrum (located in Utah) to Ancestry (also located in Utah) (*id.*, ex. 10); (4) search
results demonstrating that Ancestry incorporated as a Delaware limited liability
company in February 2011 (*id.*, ex. 11); (5) samples of Spectrum's marketing materials
wherein Spectrum describes its relationship with Ancestry as "partnering with our
largest DNA gathering customer" to develop an "innovative product" by which,"[a]fter
two years of development and testing," "we now have over 1 million samples tested"
(*id.*, exs. 2, 3, 5, 6); and (6) deposition excerpts from Gregg Williams, an owner of
Spectrum, wherein he describes the services Spectrum provides to Ancestry
("facilitat[ing] vendors that could help Ancestry" "come up with a new DNA collection
device", *id.*, ex. 1 at 151).

11. As noted, there is no dispute that Ancestry specifically targets the Delaware
market (*see, e.g.,* D.I. 31, ex. 4) and sells the accused product[4] to Delaware residents.

---

[4]Although Spectrum's counsel argues in the briefing that Ancestry "sells a DNA
testing service, not the accused product" (D.I. 46 at 3), that is a distinction I am not

7

However, there is no indication of record that Spectrum has shipped or sold any of the accused product in Delaware,[5] or that Spectrum has any control over what Ancestry does with the accused product once it is delivered to Ancestry. The agreements described above were not negotiated or executed in Delaware, nor are they governed by Delaware law. To the extent Spectrum uses the internet to advertise the accused product, a potential customer cannot place an order over the internet. (D.I. 21, ¶ 16) Simply put, aside from delivering the accused product to Ancestry (outside Delaware) who, in turn, is responsible for placing the accused product into the stream of commerce, there is no persuasive evidence of "[a]dditional conduct . . . [to] indicate an intent or purpose [on the part of Spectrum] to serve the market" in Delaware. *Asahi*, 480 U.S. at 112.

12. The above record is distinguishable from those cases where personal jurisdiction was found to exist. In *Boone*, for instance, the court exercised personal jurisdiction over a non-resident defendant ("Partek") who produced asbestos from a mine in Finland; Partek itself did not sell or distribute the asbestos to Delaware but, instead, "engaged" a third-party "to be its exclusive distributor of asbestos in the United States" and to "solicit business from the Country as a whole, including Delaware. Thus, not only did Partek anticipate that its product would be distributed to all states, including

prepared to address in the context of the instant dispute.

[5]I note, however, that Spectrum's corporate representative, Greg Williams, failed to do due diligence in terms of reviewing, e.g., "the reports made to Ancestry outlining marketing activities undertaken by Spectrum," as required under the Purchase and Sales Commission Agreement (D.I. 31, ex. 1 at 218), or talking to those individuals at Spectrum responsible for marketing and sales (*see id.*, ex. 1 at 229-30).

8

Delaware, it took affirmative steps to direct its product here." 724 A.2d at 1160.

Likewise, in *Bosch*, Chief Judge Stark found that Saver Automotive Products, Inc., a

Maryland corporation, was subject to personal jurisdiction in Delaware because Saver,

although it assembled components into automotive windshield wiper blades in

Maryland, sold the accused wiper blades to "the nationwide reseller Costco with the

expectation that Costco [would] sell the accused product in all parts of the United

States, including Delaware." 70 F. Supp. 3d at 678. In contrast, I did not exercise

personal jurisdiction over non-resident defendants who, e.g., transferred title to the

accused products in Japan prior to importation,[6] whose website did not accommodate

direct sales,[7] or whose contract with the distributor listed specific territories without

mentioning Delaware or the surrounding region.[8]

13. The record at bar is more similar to the latter, not the former, fact patterns.

The only Delaware contacts of record are those of Ancestry, and it is Ancestry who (like

the asbestos producer in *Boone* and the wiper blade assembler in *Bosch*) is

responsible for the distribution of the accused product into Delaware. Ultimately, it is

DNAG's burden to demonstrate that the exercise of personal jurisdiction over Spectrum

comports with the Due Process Clause, i.e., that Spectrum has an intent or purpose to

serve the Delaware market. The record is not persuasive in this regard.

14. DNAG has requested full jurisdictional discovery in the event the record is

---

[6]*See Intellectual Venture I LLC,* 67 F. Supp. 3d at 661.

[7]*Id.*

[8]*Belden*, 829 F. Supp. 2d at 269-70.

9

found wanting. I conclude jurisdictional discovery is warranted, given the failure of Spectrum's declarant to fully explore Spectrum's marketing and sales activities, and given the business relationship between Spectrum and Ancestry.

15. **Conclusion.** Consistent with the above, Spectrum's motion to dismiss is denied without prejudice to renew. I decline to address DNAG's motion for a preliminary injunction until jurisdiction has been established; therefore, that motion likewise is denied without prejudice to renew. An order shall issue.

United States District Judge

10